**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAM E. POWELL,

    Plaintiff,

       v.                            Civil Action No. 16-1682 (JEB)

INTERNAL REVENUE SERVICE,

    Defendant.

## MEMORANDUM OPINION

While Benjamin Franklin may have believed that "in this world nothing can be said to be certain, except death and taxes," this case demonstrates that the adage does not apply to tax records. Over the years, *pro se* Plaintiff William Powell has tried a variety of means to get Defendant Internal Revenue Service to turn over tax records related to his grandfather, his father, himself, and his family's printing business. His limited success in this venture has spurred this lawsuit. Now, in his Amended Complaint, he asserts a basket of claims against the agency, predominantly asking that it be ordered to conduct a search for additional records, produce an index of what it finds, and turn over the documents. The IRS counters in two separate Motions that the suit should be dismissed or, alternatively, that summary judgment is warranted. As the Court concurs only in part, it will grant the Motions as to a few claims.

## I.    Background

Because this Opinion largely deals with Defendant's Motion to Dismiss, the facts presented are taken from Powell's Amended Complaint and assumed to be true. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (providing standard). In its initial background section, though, the Court must rely on descriptions provided by the Internal

Revenue Manual to figure out what records are actually at issue. This is because Plaintiff often uses acronyms in his pleadings to identify what he is seeking without explaining what these terms mean.

As to the subsequent factual and procedural sections, by contrast, the Court relies heavily on the exhibits that he has attached to his Amended Complaint, as well as his briefs. These pleadings helpfully fill in missing details or clarify confusing statements found in the Amended Complaint. See Brown v. Whole Foods Market Gr., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (holding district court must consider all *pro se* litigant's allegations when considering motion to dismiss, including those found in plaintiff's opposition).

A. IRS Records

In his prayer for relief, Powell seeks a number of tax records that the IRS maintains in different computing systems. Distinguishing among them is critical to determining whether, as Defendant contends, he has failed to submit any proper request for these documents. The Court thus offers this brief primer on the IRS record system, along with the caveat that acronyms-challenged readers may find this section heavy sledding.

At the center of this litigation are records that can be retrieved through the IRS's Integrated Data Retrieval System. As its name implies, the IDRS can search more than one record system maintained by the agency. Hysell v. Internal Revenue Serv., 36 F. Supp. 3d 58, 61 (D.D.C. 2014). The command code that an IRS employee enters into an IDRS terminal "determines which database [it] searches and the data [it] retrieves." Id. These results then appear "in a computer-created record referred to as a 'transcript' viewable either on a computer screen or in hard copy form." Id.

One of these searchable databases is known as the Master-File system. Data is entered into the Master-File system "when[ever] the IRS receives a return from a taxpayer, makes a tax assessment, receives a payment, makes a refund, or takes other actions related to a taxpayer." Id. at 60 (internal quotation omitted). A master-file transcript thus offers a trove of tax information because it acts as "the official repository of all taxpayer data extracted from magnetic tape records, paper and electronic tax returns, payments, and related documents." ECF No. 31-2 (Declaration of Joy E. Gerdy Zogby), ¶ 9 (quoting Internal Revenue Manual 21.2.1.2). Depending on the specific type of data entered, this information "is stored in a record as either an 'account' or a 'tax module.'" Hysell, 36 F. Supp. 3d at 60.

The command code of "MFTRA is used to request [this] taxpayer information in the form of hardcopy transcripts" from the IDRS. See IRM 2.3.32.1. If an IRS employee uses the command code of MFTRA "complete" for a particular tax-identification number (TIN), the computer will produce a complete master-file transcript for that taxpayer – i.e., "a transcript containing all entity and tax module data associated with th[at] TIN." Zogby Decl., ¶ 11 (quoting IRM 2.3.32.8). By definition, then, this MFTRA-complete transcript contains data from any past years relevant to that taxpayer. Id. When conducting an IDRS master-file search, though, the IRS employee may instead enter a more limited MFTRA "specific" query. See IRM 2.3.32-2. Unlike a MFTRA "complete" command, this MFTRA "specific" search may be used to retrieve tax returns that include only a particular type of tax module. Id.

Regardless of the scope of the request, a Master File transcript for businesses is abbreviated as a "BMF" and "contains information about taxpayers filing business returns and documents related to that business." Zogby Decl., ¶ 8 (quoting IRM 4.71.2.2). Likewise, for individuals, the same sort of individual master-file transcript is called an "IMF." Id. In other

words, the IDRS can be used to produced IMF-specific, IMF-complete, BMF-specific, and BMF-complete transcripts, depending on what command is initially entered.

Although rare, it sometimes happens that "certain types of tax assessments cannot be implemented by [this] Master File processing" system. See Zogby Decl., ¶ 18 (quoting IRM 21.2.1.5). In such a circumstance, the assessments are housed instead on the IRS's "non-master file" system, which is also accessible through the Integrated Data Retrieval System. Id., ¶ 19. The results of such a search are known as NMF transcripts, and IRS employees retrieve them using command codes specific to the year they were filed. Id.

Finally, as relevant here, the IDRS can also be used to retrieve Taxpayer Information Files for certain taxpayers. See IRM 2.3.2.2.2. A TIF "includes information regarding active taxpayer accounts, meaning that the taxpayer's liability for that year has not been resolved or was recently resolved." Hysell, 36 F. Supp. 3d at 61 (internal quotations omitted). To retrieve this file, a command code of TXMOD(A) entered into the IDRS can be used to display most of the tax-module information that a TIF contains. See IRM 2.3.11.3.

B. Factual

Turning to the facts of this case, Plaintiff is the son of William A. Powell, a metallurgist who inherited a successful thirty-year-old printing business in Detroit, Michigan, after the sudden death of his own father, Andrew, in 1987. See ECF No. 26 (Amended Complaint) at 2. Two years later, on December 11, 1989, the elder William Powell incorporated that business in Michigan as the Powell Printing Company. Id. at 2-3. He also executed a trust involving the business around this time. Id.

A few years later, in March 1992, he passed away, and a probate estate was opened for him in the Wayne County (Michigan) Probate Court. Id.; see also id. at 7 n.3 (date of death).

Plaintiff was named as a "nominee" in that matter, but it seems that he did not find out about this proceeding until 2011. Id. at 3. At that time, Powell reviewed the case docket and noticed that no proof of service had been filed as to the listed beneficiaries. Id.

He has since been on a mission to uncover financial records related to Powell Printing Company, his father (William A. Powell), his grandfather (Andrew Powell), and certain trusts that these two men set up, at least in part because he believes that there may have been some malfeasance by the trustees in the disbursement of his family's assets. See, e.g., ECF No. 26-28 (July 5, 2016, RAIVS Request) (explaining "this requested information is needed to help me determine whether to bring action against the trustees for breach of their fiduciary duty"). To this end, he has filed approximately 89 Freedom of Information Act requests with Defendant and challenged the adequacy of the agency's response to at least some of these inquiries three separate times in federal court in the Eastern District of Michigan. See Powell v. IRS, No. 15-11033, 2016 WL 7473446 (E.D. Mich. Dec. 29, 2016); Powell v. IRS, No. 15-11616, 2016 WL 5539777 (E.D. Mich. Sept. 30, 2016); Powell v. IRS, No. 14-12626, 2015 WL 4617182 (E.D. Mich. July 31, 2015); ECF No. 34-2 (Declaration of William J. White), ¶ 3 (explaining Powell has made 89 requests).

This case fortunately has a more limited scope. At issue here is a series of requests for records that Powell made between June and July 2016. First, on June 15, he submitted a general FOIA request to Defendant, in which he predominantly sought: 1) master-file transcripts for his relatives, their trusts, and the printing business from 1989 through 1992, and 2) TXMOD(A) transcripts for the same entities and time period. See Am. Compl. at 6-8.

The IRS has since responded in ways that he believes were either incomplete or incorrect. Id. In particular, after his initial request, the Service sent him two letters in late June 2016,

explaining that it could not process his requests for either of the tax-return transcripts that he sought because those records were exempt from its FOIA-processing requirements. Id. at 10. These letters included instructions, however, on the multiple paths he needed to pursue to obtain these records. See ECF No. 26-21 (IRS Letter on June 20, 2016); ECF No. 26-9 (IRS Letter on June 22, 2016). They also warned that he had no choice but to pursue these alternative avenues as his FOIA request would not otherwise be processed. Id.

Powell, accordingly, followed several of these leads. First, he again submitted two separate requests for these master files, but unfortunately this time to the addresses listed in the IRS letters for non-master-file requests. See Am. Compl. at 9; June 20, 2016, IRS Letter at 2; ECF No. 26-10 (June 20 & 24 Requests). More specifically, he sent one such letter for the transcripts for himself and his relatives to the address listed for individuals' non-master-file transcripts and, in addition, sent off the same for the Powell Printing Company to the IRS location listed for business non-master-file transcripts. See Am. Compl. at 9; June 20, 2016, IRS Letter at 2; ECF No. 26-10 (June 20 & 24 Requests). He also included in these mailings several documents to verify his right to these tax records, including copies of his driver's licenses, certain probate documents, and death certificates for his deceased father and grandmother. See Am. Compl. at 9-10.

Next, he turned to the IRS's specialized Return and Income Verification Service (RAIVS), which the FOIA letters indicated would process requests for hard copies of master files. Id. at 11-12; June 20, 2016, IRS Letter at 2. From July 6 through July 19, 2016, he submitted four separate requests to RAIVS – two to its office in Cincinnati, Ohio, and one each to its offices in Fresno, California, and Ogden, Utah. See Am. Compl. at 14-15; July 5, 2016, RAIVS Request (requesting "1041 MFTRA Complete" for William A. Powell Trust); ECF Nos.

26-29 (July 15, 2016, RAIVS Request 1) (requesting Andrew Powell Printing Company transcripts for TXMOD(A) Complete, "BMF MFT 06 Complete," and "1065 MFTRA Complete"), 26-30 (July 15, 2016, RAIVS Request 2) (requesting Powell Printing Company and William A. Powell transcripts), 26-31 (July 19, 2016, RAIVS Request) (requesting individual master files for father and Plaintiff from 1988-1992). Although he claims that he never received any response to these inquiries, see Am. Compl. at 15, one of the exhibits he attached to his Amended Complaint is a response from the IRS to a July 2016 request that includes a redacted master-file transcript for the Powell Printing Company. Id. at 6 (discussing receipt of the letter); ECF No. 26-3 (IRS Letter on July 13, 2016, and attached transcript).

The Amended Complaint and its other exhibits also indicate that Plaintiff has had some success in getting a hold of other tax documents from the IRS at times that remain somewhat unclear. Most notably, the agency sent Plaintiff a redacted 1990 and 1991 Form 1120S tax return for the Powell Printing Company. See Am. Compl. at 6 (discussing documents); ECF No. 26-4 (Powell Printing Co. 1990 Form 1120S) at 1-2, (Powell Printing Co. 1991 Form 1120S) at 3-4. It also sent him: 1) a BMF-specific transcript for the William A. Powell Trust and one for the Andrew Powell Trust, see ECF No. 26-5 (William A. Powell Trust BMF Transcript-Specific); ECF No. 26-6 (Andrew Powell Trust BMF Transcript-Specific); 2) a BMF-specific transcript for Powell Printing Company, see ECF No. 26-7 (Powell Printing Co. BMF Transcript-Specific); 3) a BMF-complete transcript for the Powell Printing Company, see ECF No. 26-44 (Powell Printing BMF Transcript-Complete); 4) a BMF-complete transcript for the William A. Powell Estate, see ECF No. 26-47 (William A. Powell Estate BMF Transcript-Complete); 5) an IMF-specific transcript for himself, see ECF No. 26-53 (William E. Powell

IMF Transcript-Specific); and 6) a 1993 federal tax return for the estate of William A. Powell. See ECF No. 26-48 (Form 706).

C. Procedural History and Subsequent Developments

Unsatisfied with this incomplete haul, Powell filed this case on August 17, 2016, under 26 U.S.C. § 6103, asserting a host of claims against Defendant. See ECF No. 1 (Complaint). The Court dismissed that Complaint without prejudice because 26 U.S.C. § 6103 – which exempts tax returns from disclosure except under certain limited circumstances – does not provide an independent jurisdictional ground for such a suit, but instructed Powell he could refile under FOIA. See ECF No. 25 (Order on Jan. 24, 2017). He has since filed the current Amended Complaint under the Privacy Act, although he makes some references to FOIA in his narrative about the factual underpinnings of this case.

Defendant then moved to dismiss all but one of these claims and asked for leave to file a separate motion in relation to what it dubbed "Count XII," which is really just Powell's twelfth prayer for relief in the Amended Complaint. See ECF No. 31 (First Motion to Dismiss). After Powell filed his Opposition to the initial Motion to Dismiss, Defendant filed a second Motion seeking to dismiss or, alternatively, secure summary judgment on that remaining prayer for relief. See ECF No. 34 (Second Motion to Dismiss and/or Motion for Summary Judgment). In this second Motion, Defendant contended that Powell had failed to exhaust his administrative remedies as to five of the eight transcripts listed in that count, and that his claim to the other three was now moot, as the IRS had turned over those transcripts on May 15, 2017. Id. at 1-2. Both Motions are now ripe.

## II.     Legal Standard

In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow, 216 F.3d at 1113 (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Amended Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a cause of action when the complaint "fail[s] to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation omitted). Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Summary judgment, by contrast, may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a

9

material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989) (citations omitted). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III.    Analysis

The Court must travel down a rather winding path to assess whether anything from Plaintiff's Amended Complaint should survive the current Motions. This journey is compelled by Powell's pleadings' own meandering narrative – which sometimes borders on the

indecipherable – and the Court's efforts to provide the most generous reading possible of his allegations given that he is proceeding without counsel.

To provide some structure, the Court first explains why the suit must be dismissed to the extent it is asserted under the Privacy Act. The Court then takes up his claims as though they arise under FOIA and explains why some of those survive.

A.    Privacy Act

Powell relies most heavily on the Privacy Act to press his suit, despite the Court's earlier instruction to re-plead it under FOIA. See Order of Jan. 24, 2017.   As Defendant correctly points out, Powell never asserts in the Amended Complaint that he took any of the steps required to request these documents under the Privacy Act's separate scheme. He thus has not stated a claim under that statute. See Hidalgo v. FBI, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (directing district court to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim where plaintiff failed to exhaust administrative remedies); Bayala v. DHS, Office of Gen. Counsel, 827 F.3d 31, 35 n.1 (D.C. Cir. 2016) (noting "typical course of action" where plaintiff has not exhausted administrative remedies is for defendant to move for dismissal under Rule 12(b)(6)).

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used, and by imposing responsibilities on federal agencies to maintain their records accurately." Mobley v. CIA, 806 F.3d 568, 585 (D.C. Cir. 2015) (quoting Bartel v. FAA, 725 F.2d 1403, 1407 (D.C. Cir. 1984)). In other words, it "– unlike [FOIA] – does not have disclosure as its primary goal and instead uses disclosure as a tool to allow individuals on whom information is being compiled and

retrieved the opportunity to review the information and request that the agency correct any inaccuracies." Id. at 586 (quoting Henke v. Dep't of Commerce, 83 F.3d 1453, 1456-57 (D.C. Cir. 1996) (internal quotations omitted)).

To this end, under the Privacy Act, "[e]ach agency that maintains a system of records" has to provide an individual access to "his record or to any information pertaining to him which is contained in the system" upon his request. See 5 U.S.C. § 552a(d)(1). Specifically, it must allow him "to review the [relevant] record[s] and have a copy made." Id. If any agency "refuses to comply with [such] an individual request[,] . . . the individual may bring a civil action against the agency" in a federal district court, id. § 552a(g)(1)(B), and that court may "enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him." Id. § 552a(g)(3)(A).

Each agency covered by the statute – including the IRS – is responsible for promulgating rules to "establish procedures" necessary to implement these obligations. Such rules must establish a "reasonable" process for gaining access to personal records. Id. § 552a(f); see 31 CFR § 1.26(a). Defendant, accordingly, has established regulations requiring, *inter alia*, that a Privacy Act inquiry must be clearly marked "request for notification and access" and "contain a statement that it is being made under the provisions of the Privacy Act." 31 C.F.R. § 1.26, Pt. 1, Subpt. C, App. B(3)(b)(iii). It must also be correctly addressed to the title and office address of the designated official set forth in the Notice of Systems of Records and list the principal officer in charge of maintaining that system. Id., App. B(3)(c).

Relying on these mandates, Defendant argues that Powell fails to state a Privacy Act claim in his Amended Complaint because he never alleges that he complied with any of the requirements of this scheme in making his requests. See MSJ at 7-9. Indeed, Plaintiff never

asserts that his many requests even mentioned the Privacy Act, and none of the requests – which he helpfully attached to his Amended Complaint – complied with any of these regulations. See Jun. 20 & 24, 2016, IRS Requests; July 5, 2016, RAIVS Request; July 15, 2016, RAIVS Request 1; July 15, 2016 RAIVS Request 2; July 19, 2016, RAIVS Request. His letters were not properly labeled as requests for notification and access, see 31 C.F.R. § 1.26, Pt. 1, Subpt. C, App. B(3)(b)(ii), they did not mention the Privacy Act, id. App. B(3)(b)(iii), they did not specify the name and location of the particular system of records as set forth in the Notice of Systems, id. App. B(3)(b)(v), and they did not include "the title and business address of the official designated in the access section for" such a system as set forth in the Notice of Systems. Id. App. B(3)(b)(v). Plaintiff instead clearly referred only to FOIA in his initial requests and appears to have sought disclosure of the documents exclusively under that statute.

As a result, he has not alleged facts essential to any claim under the Privacy Act, and this neglect is sufficient to warrant dismissal of these counts to the extent they rely on that statute, rather than FOIA. Taylor v. Treasury Dep't, 127 F.3d 470, 474 (5th Cir. 1997) (affirming dismissal on ground that plaintiff's "failure to present a request that comported with applicable Privacy Act regulations constituted a failure to exhaust administrative remedies because, as a technical matter, the IRS never denied a properly framed request for access to records"); Lee v. Dep't of Justice, 235 F.R.D. 274, 285 (W.D. Pa. 2006) ("For a [Privacy Act] request to be proper, it must be made in accordance with the agency's published regulations regarding, inter alia, procedures to be followed. Accordingly, a claimant who has failed to present a request comporting with the applicable regulations has failed to exhaust his administrative remedies because, as a technical matter, the agency at issue never denied a properly framed request for access to records.") (internal citations omitted); Scaife v. IRS, No. 02-1805, 2003 WL 23112791,

at *3-4 (D.D.C. Nov. 20, 2003) (dismissing Privacy Act claims for failure to comply with IRS regulations requiring name of the system or subsystem or categories of records to which access was sought); Macleod v. IRS, 2001 WL 846487, at *1 (S.D. Cal. June 4, 2001) (same); Reeves v. United States, 1994 WL 782235, at *3 (E.D. Cal. Nov. 16, 1994) (explaining plaintiff's failure to identify name and location of particular system of records constituted failure to exhaust administrative remedies); Lilienthal v. Parks, 574 F. Supp. 14, 18 (E.D. Ark. 1983) (dismissing Privacy Act claim for failure to exhaust administrative remedies where plaintiff's Privacy Act request failed to comply with regulations).

The Court, consequently, will dismiss these claims, but without prejudice, so that Powell may return to a federal district court after he has pursued his administrative remedies. Of course, the first step in doing so is the submission of a proper Privacy Act request to Defendant, as explained above. To accomplish that task, he will need to submit his request to the correct address, labeled as a "Privacy Act Request," and include the names of the specific systems of records to which he wants access, the location of those systems, and the name and address for the IRS manager of that system. All of this information can be found online on the IRS's System of Record Notice. See IRS Privacy Act of 1974, as Amended; System of Records Notice, 80 Fed. Reg. 54,063 (Sept. 8, 2015), https://www.federalregister.gov/documents/2015/09/08/2015-21980/privacy-act-of-1974-as-amended-system-of-records-notice.

B.    FOIA

The Court next turns to a consideration of Powell's claims under FOIA. Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). "The basic purpose of FOIA is to ensure an informed

citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute thus provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See id. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 754-55 (1989). In making this determination, the court "[a]t all times . . . must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)). In order to satisfy FOIA, an agency must thus demonstrate both that it adequately searched for responsive records and that it turned over all such records not subject to a specific exemption.

Critically, though, FOIA only requires that an agency turn over records, not that it provide a requestor with specific information or answer questions. Willaman v. Erie Bureau of Alcohol Tobacco Firearms & Explosives, 620 F. App'x 88, 89 (3d Cir. 2015) ("It is clear . . . that nothing in the [FOIA] requires answers to interrogatories but rather and only disclosure of documentary matters which are not exempt.") (internal quotations marks omitted); Di Viaio v. Kelley, 571 F.2d 538, 542-43 (10th Cir. 1978) (same); see also Hedrick v. FBI, 216 F. Supp. 3d 84, 95 (D.D.C. 2016); Hudgins v. IRS, 620 F. Supp. 19, 21 (D.D.C. 1985). It "is [also] well established that 'questions about the authenticity and correctness of the released records are beyond the scope of the Court's FOIA jurisdiction.'" Hedrick, 216 F. Supp. 3d at 95 (quoting

Jackman v. Dep't of Justice, No. 05-1889, 2006 WL 2598054, at *2 (D.D.C. Sept. 11, 2006)). To the extent, then, that Powell is attempting to question the authenticity of certain documents already released to him, see, e.g., Am. Compl. at 6 (referring to receipt of an "alleged" copy of certain tax returns), or to seek acquisition or confirmation of certain information outside of his requests for particular records, his claims cannot proceed. See Am. Compl. at 26-27 (requesting disclosure of certain social security numbers or parent EINs). Inasmuch as Powell seeks specific forms of relief such as a Vaughn Index in his Amended Complaint, moreover, those remedies are premature at this stage because it is unclear whether such an Index will ultimately be necessary. See, e.g., Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993).

So what is left? The only allegations from his Amended Complaint that Powell can proceed on under FOIA are those that might plausibly be read as seeking records via his June and July 2016 letters. All of these records he requested at some point at least once from RAIVS as well. The Court, again interpreting the Amended Complaint as generously as possible, comes up with this list:

| Entity/Individual | Transcript | Request |
|---|---|---|
| Andrew Powell Printing Company | Master file-complete<br><br>Master file-specific for "06"<br><br>Master file-specific for Form 1065<br><br>TXMOD(A) | July 15 RAIVS Request 1 |
| Powell Printing Company | Master file-complete<br><br>Master file-specific for Form 1120<br><br>TXMOD(A) | July 15 RAIVS Request 2 |

| | | July 5 RAIVS Request |
|---|---|---|
| William A. Powell Agreement of Trust | Master file-complete | |
| | Master file-specific for Form 1041 | July 15 RAIVS Request 2 |
| | TXMOD(A) | |
| Estate of William A. Powell | Master file-complete | July 5 RAIVS Request |
| | Master file-specific for Form 706 | |
| | Master file-specific for Form 1041 | July 15 RAIVS Request 2 |
| | TXMOD(A) | |
| William A. Powell | Master file-complete | July 19 RAIVS Request |
| | Master file-specific for Form 1040 | |
| | TXMOD(A) | |
| William E. Powell | Master file-complete | July 19 RAIVS Request |
| | Master file-specific for Form 1040 | |
| | TXMOD(A) | |

As the IRS now honorably concedes, its letters to Powell after his initial requests about how to properly seek these tax records "could have been clearer." MSJ at 6. As a result, the Service has taken the position that, to be fair, it will treat at least these above-listed RAIVS requests as though they were properly submitted inquiries, and, in fact, it has since turned over three of the transcripts that Powell requested. Id.

But this RAIVS category (and thus the chart) does not encompass all of the records that Powell mentions in his Amended Complaint, nor does the IRS interpret him to still be seeking all of the documents listed in this chart, as explained more thoroughly below. In addition, at least in

regard to some of the records mentioned in this chart, the Service raises additional arguments about why it should not have to turn them over. In short, as far as the Court can tell, there are four categories of records that must now be dealt with under FOIA: 1) transcripts or records that Powell mentions in his Amended Complaint, but never requested from the agency in any of his various submissions; 2) transcripts that he did seek through RAIVS and that the agency has now turned over; 3) the Andrew Powell Printing transcripts, which Defendant concedes were requested, but now claims imperfectly so; and 4) other records that Powell plainly requested from RAIVS, but which the IRS has not yet produced.

The Court takes up each separately, concluding that the first two groups warrant dismissal, but the final two sets of claims survive.

### 1. *Unrequested Records*

It should come as no surprise that where Powell makes no allegation that he ever requested particular records from Defendant, his FOIA claims related to these documents must be dismissed. Church of Scientology v. IRS, 792 F.2d 146, 150 (D.C. Cir. 1986) (stating claims must be dismissed where requestor failed to follow "the statutory command that requests be made in accordance with published rules"); see McDonnell v. United States, 4 F.3d 1227, 1236 (3d Cir. 1993) ("[Section] 552(a)(3) conditions the agency's duty [to make records available] upon receipt of a request that is made in accordance with published rules stating the time, place, fees, and procedures to be followed and that reasonably describes the records sought."); Kalu v. IRS, No. 14-998, 2015 WL 4077756, at *4 (D.D.C. July 1, 2015). In particular, as the IRS points out, Powell now asks to get non-master files (NMF) in his Amended Complaint for the printing companies, himself, and the Estate of William E. Powell. See Am. Compl. at 26-27 (Count 12). But Plaintiff never alleges that he ever asked the IRS to search for these transcripts

in his initial FOIA request, his subsequent requests on June 20 and 24, 2016, or his four RAIVS requests. None of his attached records of these requests, moreover, makes any mention of non-master-files. The closest he comes is the fact that he sent the June 20 and 24 inquiries to the address listed for non-master-files requests, but the letters themselves clearly ask for other types of transcripts. As such, his claims related to these records cannot stand.

In addition, Defendant maintains that Powell asks for many other specific records in his Amended Complaint that were also not included in any of these requests, such as the 1990 corporate tax returns for the Andrew Powell Printing Company. See Am. Compl. at 26. The Court agrees that there is no allegation that Powell asked for these specific records, and, as a result, he cannot now demand that the agency search for them. While Powell may apparently believe that many of these specific tax documents will turn up in the various transcripts that he did request, that does not constitute an independent claim to such records.

The Court, consequently, agrees that it must dismiss any claim that Powell brings related to documents that he did not identify in his requests to the IRS.

### 2. *Mootness*

Defendant next argues that Powell's claims to three of the transcripts that he did request from RAIVS are now moot, as the IRS turned them over to him on May 15, 2017. See MSJ at 2-4. Powell, for his part, agrees that he got these records, but nevertheless complains that they are either incomplete or indecipherable to him. See ECF No. 35 (Opposition to MSJ) at 5. Upon examination – which Powell helpfully assists by attaching them to his Opposition – the Court agrees with the IRS that this aspect of his suit is indeed moot. It will thus dismiss his claims as to these three transcripts.

Article III of the Constitution limits federal-court jurisdiction to actual cases or controversies, which "must be extant at all stages of review, not merely at the time the complaint is filed." Genesis Healthcare Corp. v. Synmczyk, 133 S. Ct. 1523, 1528 (2013) (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997)) (quotation marks omitted). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." Id. (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990)) (quotation omitted). In the FOIA context, this means that where the government has released certain requested documents, the case is moot as to them. William v. Connolly v. SEC, 662 F.3d 1240, 1244 (D.C. Cir. 2011); cf. Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform.").

This is precisely the circumstance the Court confronts here with regard to Powell's request for an Individual Master-File (IMF-complete) Transcript for William E. Powell, a Business Master-File (BMF-complete) Transcript for the Estate of William A. Powell, and a BMF-complete for the Powell Printing Company. As Plaintiff concedes, the IRS did recently turn these three records over to him. See Opp. to MSJ at 4-8. Although he nevertheless protests that his claim to them should not be dismissed because he believes they were altered, he provides no reason to demonstrate this to be the case, beyond his suspicion that there should be data entries for every year. But there is no inherent reason that this should be so, and the Court finds no evidence that Defendant tampered with these transcripts. Indeed, the agency has provided an affidavit explaining how it produced these documents, see White Decl., ¶¶ 20-23, which is

entitled to a presumption of good faith. SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Powell's speculation to the contrary, in other words, is of no moment.

Likewise, his further complaint that he cannot decipher the information provided in the transcripts is not relevant to a claim under FOIA. Hedrick, 216 F. Supp. 3d at 95 (explaining FOIA only requires records be released); Hudgins, 620 F. Supp. at 21 (same). The agency is under no obligation to provide him with an interpretation or to help him suss out the information these records contain. Id.

As such, dismissal of these aspects of his Amended Complaint is proper.

### 3. *Andrew Powell Printing Transcripts*

Although the Court's disposition of the issues above considerably narrows this suit, all is not lost for Powell. In particular, he and the IRS both agree that Powell's multiple RAIVS requests also sought several transcripts for the Andrew Powell Printing Company – namely, a TXMOD(A), Master file-Complete, Master file-Specific for "06" tax modules, and Master file-specific for Form 1065. Unlike the other documents that Defendant turned over from these requests, the IRS maintains that Powell never perfected his request for these particular records. More specifically, he failed to attach the appropriate forms or documentation showing his authority to obtain tax records for this entity. See MSJ at 11 (citing July 15, 2016, RAIVS Request 1); White Decl., ¶ 10. The IRS thus contends that dismissal should ensue. See MSJ at 11.

The Court, however, believes this result premature. Most notably, it appears that Powell alleges that he attached the necessary documents to his June 20 and 24, 2016, requests for master-files, which were incorrectly mailed to the address for non-master-file requests. See June 20 and 24, 2016, Requests. As the IRS acknowledges, his confusion over the appropriate

address for these requests was reasonable. The agency never clearly discusses, moreover, whether the documentation it has otherwise received is sufficient for him to establish his right to the records, nor what additional documents in particular it would require. See White Decl., ¶ 10.

Given the brevity of its briefing on this topic, the Court cannot find that Defendant has met its burden to show that Powell has clearly failed to make a valid request for these records. It may ultimately be the case that he cannot support his right to these documents, but the Court is not prepared to hold as much at this early stage.

4. *Remaining Issues*

The Court also finds nothing in the IRS's Motion to Dismiss or Motion for Summary Judgment that adequately explains why Powell's FOIA claims as to the remaining documents – listed in the chart at pages 16-17, *supra* – should be dismissed. Like the three that it provided on May 15, these transcripts are all identified in his RAIVS requests. Defendant, moreover, seems to agree in its Motion for Summary Judgment that the fair response to its failure to provide clear instructions on how to properly submit such requests would be to treat these inquiries as properly filed. See MSJ at 6. Yet the IRS then seems to further resolve that Powell is no longer seeking any of these transcripts because he does not again mention them by name in his final prayer for relief. Id. at n.2 (relating that the transcripts Powell lists as having been requested at Am. Compl. 13-15 do not match up with his conclusion at Am. Compl. 26-27).

Given the *pro se* nature of this pleading, though, the Court does not think this assumption warranted. Read as a whole, the Amended Complaint clearly seeks all of the requested transcripts listed in Powell's four RAIVS requests. His final prayer for relief, as alluded to above, does mostly focus on specific tax documents that he apparently hopes to find in those transcripts, but that does not mean that he has abandoned his claim to the transcripts themselves.

The Court thus thinks the prudent course is to figure out whether he is entitled to have any of these additional records turned over to him, rather than assuming he no longer seeks them.

Of course, it may be that some of these transcripts simply do not exist, such as the Master-File specific requests for Form 1065 tax modules. Or, as the IRS seems to imply, they may be duplicative of transcripts he has already received. See White Decl., ¶ 19. But the Court cannot assume this on a Motion to Dismiss. As a result, for now, the Court finds that Powell can continue with his FOIA claims for the following records: 1) Powell Printing Company – Master file-specific for Form 1120 and TXMOD(A); 2) William A. Powell Agreement of Trust – Master file-complete, Master file-specific for Form 1041, and TXMOD(A); 3) Estate of William A. Powell – Master file-specific for Form 706, TXMOD(A), and Master file-specific for Form 1041; 4) William A. Powell – Master file-specific for Form 1040, Master file-complete, TXMOD(A); and 5) William E. Powell – Master file-specific for Form 1040 and TXMOD(A). It will thus deny both Motions as to these records.

## IV.    Conclusion

For the reasons stated above, the Court will grant Defendant's Motions as to Powell's claims under the Privacy Act and as to his FOIA claims for the IMF-complete for William E. Powell, the BMF-complete Transcript for the Estate of William A. Powell, and the BMF-complete for the Powell Printing Company. To the extent that Powell also sought additional transcripts through his various RAIVS requests, as described in Sections III.B.3-4, *supra*, the Court denies the Motions. A contemporaneous Order so stating shall issue.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 9, 2017

23